*The following opinion was delivered
By Mr. Justice Sutherland.
The decree of the chancellor proceeds upon the ground that the evidence in the case authorized the issues awarded by the vice chancellor, and that whether his decision upon the other question presented in the case to wit, that “ the infant Mary Ann should have been a defendant, instead of a joint complainant,” was right or wrong, as Mrs. Idley was not injured thereby, it afforded no ground for an appeal by her in her own name. The decree, I" think, is correct in both its branches.
First, as to the feigned issues. The awarding of a feigned issue is always a matter of sound discretion in a court of equity ; its object is to inform the conscience and judgment of the court in relation to matters of fact involved in more or less doubt and difficulty. The trial by jury is supposed to afford advantages for eliciting the truth in relation to contested matters of fact unknown to any other system. It is competent for a court of equity, however, even where the evidence is contradictory and nearly balanced, to decide for itself without invoking the aid of a jury. 2 Atkyns’ R. 295. 2 Vesey’s R. 256. Barnard, Ch. Rep. 100. The verdict in such cases is not binding upon the court; it is but evidence addressed to its judgment, and if it does not produce conviction, it may be disregarded. Instances, however, are not unfrequent in which orders for an issue have been reversed upon appeal, where the appellate court deemed the preponderance and weight of evidence so decided as to remove all essential difficulty from the case, and to render the expense and delay of a trial at law unnecessary and useless. La Guen v. Governeur & Kemble, 1 Johns. Cas. 506. Leibblehill v. Brett, 1 Brown’s P. C. 57, 9.. It is incumbent upon a party who seeks to reverse such an order, to show that upon the evidence, as it stood, he was clearly entitled to a decree upon the matter of fact involved in the issue. Without analyzing the evidence, or intending to express any opinion as to its preponderance, either for or against the competency the testator to make a will on the 3d May, 1825, I shall content my *236 self with saying that in my judgment, it leaves that tact so far involved in *doubt as to render it discreet and proper in the chancellor to take the opinion of a jury upon it. Different witnesses, with perhaps equal means of knowledge, express different opinions in relation to it. Some of them are related to the parties, and the testimony of others is, to a certain extent, inconsistent with their previous acts. It presents in these and other respects a case peculiarly fit for the cognizance of a jury.
If the testator should be found to have been incompetent to make a will on the 3d May, 1825, the question then "arises, whether there is sufficient evidence to establish the previous will of the 3d of April. The execution and contents of that will are sufficiently shown ; and there seems to be no doubt of the competency of the testator at that time to make a will; and I agree with the vice chancellor, that the preponderance of evidence is strongly against the allegation, that Bowen procured that will to be made by fraud and imposition, practiced by him upon the testator. The only serious question in relation to it, is as to its revocation. The bill charges that it was destroyed by the defendant, Mrs. Idley, or by her direction and procurement, and without the direction, desire, counsel or knowledge of the testator. The defendant, in her answer, admits that about three weeks after the making of the will, the testator requested her to bum it, and that she did commit it to the flames, and that it was utterly burned up and destroyed under the direction and in the sight of the testator. If this account of the transaction is true, (and there is no direct testimony in the case to contradict it,) then the only question upon the point will be as to the capacity of the testator at that time to revoke his will. . The destruction of the instrument, by the direction and in the presence of the testator, or even by his own hand, will not amount to the revocation in judgment of law, unless he had at that time sufficient capacity to understand the nature and effect of the act, and performed it, or directed it to be performed freely and voluntarily, with the intent to effect a revocation ; and although the instrument is not in being, its contents having been satisfactorily shown, there is no difficulty in establishing it as a will, if it is shown.tohave been improperly destroyed. Trevelyan v. Trevelyan, 1 Phillimore, 153.
*The precise day on which this will was destroyed is not shown ; the answer says it was about two or three weeks after it was made. This would carry it to the latter part of April, a period so near the 3d of May as to be within the range and operation of the evidence which tends to show the incompetency of the testator at that time ; especially when we consider that his incompetency, if it existed, was not produced by any sudden stroke or calamity, but was the result of a gradual failure of his mental and physical powers, produced by a protracted and excruciating disease. The same considerations, therefore, which call for an issue in relation to the making of the will of the 3d of May, apply with considerable, if not equal force, to the revocation of that of the 3d of April.
It is true, that a will proved to have existence, but not found at the death of the testator, is presumed to have been destroyed by him animo revocandi, with the intent of revoking it; and it is incumbent upon a party who seeks to esta-blish such will to repel that presumption, and show that it was improperly destroyed. Betts v. Jackson, 6 Wendell, 173, 197, and the cases there cited. 2 R. S. 68, § 67. The appellant will have the benefit xof this,principle upon the trial of this issue, and it will be for the complainants to impeach the revocation, by showing the imcompetency of the testator at the time, or that it was procured by fraud. The making and contents of the will of April 3d are so clearly established, that there was no necessity for an issue in relation to either *238 of those points ; but it being proper with respect to the revocation, it was per haps discreet in the vice chancellor to submit the whole to a jury, especially as it would occasion no additional delay, and very little, if any, additional expense.
As to the objection that the infant, Mary Ann, was improperly made a complainant, instead of a joint defendant in the cause, the chancellor held that Mrs. Idley, the appellant, had no interest in that question; and he accordingly dismissed so much of her appeal from the decree of the vice chancellor as related to that subject. If Mary Ann had been of full age instead of an infant, and had united in the suit as complainant, deeming it due either to justice or her own interest to endeavor to set aside the will of the 3d of May, and *establish that of the 3d of April, it would hardly be contended that Mrs. Idley could in any stage of the proceedings, have objected to the position which she had though proper thus to assume. Being a proper and necessary party to the suit, no objection would lie on that ground. Mrs. Idley would have no legal or equitable right to insist that she was entitled to the aid and cooperation of Mary Ann as an ally, instead of being compelled to meet her as an adversary; and if a degree, under such circumstances, should be made, which might be deemed injurious to the interests of Mary Ann, but which did not in that respect affect the interest of the defendant, no lawyer would for a moment suppose that it would be competent for the defendant to overhaul such decree by an appeal.
It is a fundamental principle, applied with more or less strictness in all courts, that no one can be a party to a suit who has not, either in his own right or as the representative of some other person, an interest in the subject matter in dispute. 2 Mad. Ch. 174. 11 Johns. R. 488. In a court of equity, as the interest changes or varies, the parties are also changed, it being the object of the court always to keep before it those persons, and those only, whose interests are to be affected by its judgment or decree. Harrison v. Ridley, Comyn’s R. 590. This subject was well considered by this court, in the case of Reid v. Van Der Heyden, 5 Cowen, 720. That was an appeal by John G. Van Der Heyden to the court of chancery sitting as a court of probate, from a decree of the surrogate of the county of Rensselaer, establishing the will of one Samuel Van Der Heyden. Samuel Van Der Heyden died on the 27th of November, 1824, leaving his wife ensient. of a male child. On the 10th December following, the will was presented for proof, the respondent, J. G. Van Der Heyden, having previously entered a caveat against it. Citations were duly issued, and J. G. Van Der Heyden, who was a brother of the half blood to the testator, appeared and contested the will, alleging that the testator, at the time of its execution, was not of sound and disposing mind and memory. The surrogate, on the 20th of April, 1824, established the will. From that order or decree, J. G. Van Der Heyden appealed to the court of chancery. It appeared before the chancellor that the child, #of which the wife of the testator was ensient at the time of his death, was born on the 15th day of April, 1824, before the appeal was brought, and was living at that time, being the only child of the deceased. The" will gave the whole of the testator’s property to his wife and child, and appointed the appellant and respondent executors of the will and guardians of the child after he should attain the age of ten years. Upon these facts, a petition was presented to the chancellor to quash the appeal brought by Van Der Heyden from the surrogate’s decree, on the ground that all his interest in the subject matter ceased upon the birth of the child, in whom the property then vested, independently of the will, as heir of his father, and *240 that even if the child should die, Van Der Heyden could not claim ; that he therefore was not aggrieved by the decree, and could not appeal. It was admitted, that before the birth of the child, as one of the heirs and next of kin, Van Der Heyden had an interest to set aside the will. The chancellor refused to dismiss the appeal, and awarded an issue to try the validity of the will. From that order an appeal was brought to this court, where the decree of the chancellor was reversed, exclusively upon the ground that he should have quashed the appeal, it having been brought by a party whose interest in the subject matter had ceased, and whose right to continue the litigation of course ceased with it. That case, and the reasoning and authorities by which it is supported, abundantly establish the general principle, that no person can prosecute a suit in chancery, either by appeal or otherwise, who is not interested in the subject matter ; -and that although there may have been an interest when the suit was commenced,- if such interest is terminated during its progress, his right farther to interfere in the litigation is at end. The decrees of a court of chancery frequently have various aspects and bearings, affecting variously the different parties to the suit. A party aggrieved by one branch of a decree, does not thereby acquire a right to call in question another portion of the decree which has no bearing or affect upon his rights and interest. He can appeal only from such parts of the decree as affect him.
*Is this case varied by the circumstance, that the party whose interest the appellant is seeking to protect in this branch of the appeal, is an infant ?
The appellant is not her guardian, nor does she sustain in any legal relation to the infant which would authorize her to interfere with her affairs ; but if she did, that relation should appear on the face of the proceedings, and the appeal should be specifically as such guardian, so far as its object was to protect the infant’s rights. In the case of Reid v. Van Der Heyden, already referred to, it seems to have been urged or suggested, that although Van Der Heyden had no beneficial interest himself in the question, still, the relation in which he stood to the infant, (being his uncle and one of his guardians under the will, after he should attain the age of ten years,) authorized him to vindicate his rights. In answer to that view of the case, Judge Woodworth says : “ It is not pretended that Van Der Heyden is guardian to the infant, either ad litem or otherwise ; he has neither the custody nor protection of the child. Why allow him to litigate under pretence of benefilting persons who have a real interest ? Are we to presume them inattentive to their rights, and that the infant will be injured by their neglect 1 If this be so, what right has a stranger to interfere ? ' The infant must seek his remedy on coming of age.” The rights of the infant in this case are expressly saved by the chancellor’s decree ; for, while it dismisses so much of the appeal as seeks to protect her rights, it provides that it shall be without prejudice to the right of any person to apply for a reference to inquire whether it is for the interest of the infant to have this suit prosecuted in her name. Upon such application, the rights and interests of the infant will -be distinctly presented and passed upon. The established order and course of the court will be adhered to, 1 Paige, 179; 2 id. 80; 2 Johns. Ch. R. 542; 3 P. Wms. 142; 1 Cox, 285; 1 Dick. 310; 3 Atk. 603; and if the decision of the chancellor should be unsatisfactory to those who, on that occasion, may be the legal representatives and guardians of the infant, they will stand in a position which will enable them to have it reviewed without violating the elementary principle that no person can complain of or overhaul a decree, *by which he is not affected or aggrieved. Steel v. White, 2 Paige, 478. The books are full of cases in which courts of equity have, of *241 their own motion or upon petition, directed a reference to ascertain whether a suit, prosecuted for an infant by a prochein ami, is for his interest; whether the guardian is a suitable person, and whether the infant is properly placed in the cause. 1 Paige, 178. 2 id. 80. 2 Johns. Ch. R. 542. 3 P. Wms. 142. 1 Cox, 285. 2 Sch. & Lef. 158. But no case has been referred to, in which such an objection has been taken, either by pleading or at the hearing, where there were other competent parties to the suit. It is a collateral proceeding, intended to change the character or position of the parties before the cause is ripe for a hearing on the merits.
I am of opinion that the decree of the chancellor should be affirmed.
On the question being put, Shall this decree he reversed ? the Chief Justice, Justices Sutherland and Nelson, and eighteen members of the court besides, voted in the negative, and only one member in the affirmative.
Whereupon the decree of the chancellor was affirmed.